O’Nball, J.
delivered the opinion of the Court.
The second sentence of the 52d section of the Act of ’39, “ concerning the office, duties, and liabilities of sheriff,” provides, “ The sheriff by himself, or his regular deputy, shall have power to call out the posse comitatus to his assistance, whenever he is resisted, or has reasonable grounds to suspect and believe that such assistance will be necessary, in the service or execution of process, in any criminal case.” If ex-pressio unius be exclusio alterius, then it would seem to be too plain to admit of doubt, that the posse can only be called out in criminal cases.
If, however, the power still remains m executing final process *n cases> ^ ^oes no(; authorize such a resort, until there be resistance, or a shew of it. Here there was nothing like resistance. The slaves were merely concealed.
It may be, and I think that is the better opinion, that the sheriff or his deputy may take with him assistants, in the 'execution of final or mesne process. It is true, it is said, in Bac. Abr. Tit. Trespass, G.; “ if a stranger have officiously assisted a sheriff in the execution of a fi. fa. which issued upon a regular judgment, he is not liable to an action of trespass, for it is not only lawful, but it is the duty of every man t0 assist the execution of such writ.” Templeman's case is referred to: and it is true, in the 3d ruling it is said, “ the command or desire of the bailiff is not necessary, for every one not only may, but is by law bound to give their assistance to officers in execution of justice.” But on referring to the case it does not seem to have been necessarily involved. The defendant pleaded that he entered in aid of a bailiff, who had a writ of execution, and took the goods of another, and not the plaintiff. The plaintiff demurred. In such a case, an entry in aid of a bailiff was to be presumed to be by his command. In Bac. Abr. at the same reference, it will be found that an officious assistant, entering without the command of the sheriff or his deputy or bailiff, cannot justify as they can. He takes upon himself the peril of shewing that he is, in every respect, faultness.
*287 In this case there are many features like the case of Parkes and Percival v. Evans, under bailiff. It appears there, that the bailiff and others knocked at the door of Parkes’s house,1 with private process to arrest one Brocklesberry who lodged there. Parkes’s wife opened the door a little, they thereupon rushed in with drawn swords, bore down the lady, and broke open the chamber door; and also broke open Percival’s house adjoining, to get instruments to break doors. The Lord Chief Baron and Chief Justice Hobart held the first entry unlawful, for the opening of the door was occasioned by their craft, and then used to the violence which they intended.
Here the defendant was in company with the deputy; there is no evidence whatever that he went at his request: they went at night, after the family ha.d retired to rest. They opened and entered the kitchen; there the son of the defendant found them ; the deputy followed him into the dwelling, as he said. After examining a negro house, the party returned to the kitchen; the fire was extinguished by one of the plaintiff’s sons. The party then builded a fire near the door of the dwelling house. They entered it against the will of the plaintiff. The defendant in the entry, and in going up aloft, acted of his own head. The witness of the plaintiff proved that they carried torches through the house, examined under the beds where the plaintiff, his daughters, and other members of the family were sleeping. This was as much an entry by craft, as was the case in Parkes and Percival v. Evans, and the entry, like that, unlawful.
But in another point of view, the defendant ought to be regarded as a trespasser without justification. It is plain that the whole affair was got up, so as to give to Davis the possession of the slaves. He was in company, but did not go to the house; he waited in the road until, like the lordly beast of the forest, his prey could be hunted down for him. It is the first time in the history of jurisprudence, that a defendant in execution was one of the sheriff’s assistants to make a levy. It is only to be believed that he did assist in order to secure the property to himself. The defendant was his friend, he was one of the appraisers of the property, when he was to take it at a valuation from the plaintiff: he was, I think, one of the witnesses to the deed; the next day after this affair, he and his brother came back and demanded the negroes’s clothes — they were refused ; he and his brother, then, went into the negro house, on the plaintiff’s land, tore down a dresser, and took away the negroes’s clothes. These occurrences, on the next day, were in proof, but were not allowed to enter into the verdict. They, however, shew that the acts of the defendant were not in aid of the law; but that they were the result of the strong wilful man’s power over the poor and the weak.
1 Bay, 352.
3 McC. 506.
I think, too, that the levy in the night may. as in The State v. Thackum and Mayson, be very well thrown into the scale to shew that this was a mere naked trespass, under color but without the sanction of law. It is true that it may often be, that a levy can only be made at night, and where that necessity is shewn, I should think it might excuse the officer. But when he goes, without any previous attempt to levy, at a late hour of the night, and thus unnecessarily intrudes on the rest of the debtor and his family, it shews a wantonness which may even make a sheriff a trespasser from the beginning, much more an officious assistant.
It is true, as is ruled in DeGraffenreid v. Mitchell, a man cannot make his house the protection of another’s goods against execution. But. in this case, although legally the slaves were the property of Davis, yet they were not in the possession of the plaintiff, as in DeGraffenreid v. Mitchell, to assist the owner in keeping them from seizure under execution. They had been rightfully in the plaintiff’s possession, under the contract of hiring, which had, it is true, terminated. But the owner had not demanded possession. Indeed he lived in North Carolina, and I am not aware that he had made any application for the slaves personally, or by agent. The plaintiff, too, had, I think, a great equity to retain the possession, until this whole affair was investigated, in another forum, and Davis’s accounts were properly arranged and settled. Hence this case is not at all parallel to DeGraffenreid v. Mitchell, and the sanctity of the plaintiff’s house is not affected by officiously attempting to conceal the property of another.
The trespass of the defendant, without justification or excuse, being made out, we think there is nothing, in any of the grounds of appeal, which ought to send this case back for another trial.
The motion is dismissed.
The whole Court concurred.

Motion refused.